UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOSE LUIS AURELIO PINZON and ADAN VIDAL
LOPEZ RAMIEREZ,

                                        Plaintiffs,

                    -against-

168 8TH AVENUE FOOD CORP., D/B/A SQUARE
DELI, and ADAM SALEH,

                                        Defendants.

------------------------------------------------------------------X

20-CV-06156 (PAE) (SN)

**REPORT AND
RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___ 7/14/2021 _

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL A. ENGELMAYER:**

On February 2, 2021, the Honorable Paul A. Engelmayer entered a default for the

Plaintiffs against the Defendants. See ECF No. 28. On that same day, Judge Engelmayer referred

this matter to my docket to conduct an inquest and issue a report and recommendation

concerning the Plaintiffs' damages. See ECF No. 29. The Plaintiffs submitted Proposed Findings

of Fact and Conclusions of Law in support of damages, seeking a total award of $121,673.53 in

unpaid wages, unpaid overtime pay, liquidated damages, and attorney's fees and costs. See ECF

No. 31 Proposed Findings of Fact and Conclusions of Law ("Pl. Brief") at ¶ 71. Because the

Plaintiffs have provided a sufficient basis on which to award damages, and the Court finds it

appropriate to award attorney's fees and costs—albeit with increases to damages and reductions

to fees—I recommend that the Plaintiffs be awarded a total of $116,229.50, with prejudgment

interest to be calculated at the time of judgment.

## BACKGROUND

Jose Luis Aurelio Pinzon and Adan Vidal Lopez Ramierez ("Plaintiffs") sued the Defendants, 168 8th Avenue Food Corp., doing business as Square Deli ("Square Deli") and Adam Saleh ("Saleh," collectively "Defendants"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL"). See generally ECF No. 1 Complaint ("Compl."); 29 U.S.C. § 201, *et seq.*; N.Y.L.L. § 650 *et seq*. Plaintiffs allege that the Defendants failed to pay minimum wage and overtime pay, failed to maintain adequate record-keeping, or provide the statutory wage and hour notices, and required the Plaintiffs to pay—without reimbursement—the costs and expenses for purchasing and maintain equipment related to their jobs. Compl. ¶¶ 74–97. They seek actual damages, liquidated damages, and attorney's fees and costs, as well as prejudgment interest. See Compl. at ¶¶ (a)–(r).

After the Defendants failed to answer or otherwise appear in this action, Judge Engelmayer issued an Order to Show Cause instructing the Plaintiffs to move for default or risk dismissal for failure to prosecute. See ECF No. 18. Plaintiffs moved for default and, again, the Defendants failed to respond. See ECF No. 19. Judge Engelmayer entered default judgment in favor of the Plaintiffs and referred the matter to my docket for an inquest and report and recommendation as to the Plaintiffs' damages. See ECF Nos. 28, 29.

Plaintiffs filed their Proposed Findings of Fact and Conclusions of Law and a certificate of service. See ECF Nos. 31, 32. To date, the Defendants have not responded. Therefore, I consider the motion fully briefed.

**DISCUSSION**

I.      **Legal Standard**

The Court of Appeals set forth the procedural rules applicable to the entry of a default

judgment in City of New York v. Mickalis Pawn Shop, LLC:

> Federal Rule of Civil Procedure 55 is the basic procedure to be
> followed when there is a default in the course of litigation." Vt.
> Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir.
> 2004). Rule 55 provides a "two-step process" for the entry of
> judgment against a party who fails to defend: first, the entry of a
> default, and second, the entry of a default judgment. New York v.
> Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a
> default, formalizes a judicial recognition that a defendant has,
> through its failure to defend the action, admitted liability to the
> plaintiff. . . . The second step, entry of a default judgment, converts
> the defendant's admission of liability into a final judgment that
> terminates the litigation and awards the plaintiff any relief to which
> the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true all of the

well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See

Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109

F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973

F.2d 155, 158 (2d Cir. 1992)). Because a defaulting party does not concede mere legal

conclusions, the court must still determine "whether the unchallenged facts constitute a

legitimate cause of action." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420

(S.D.N.Y 2000) (cleaned up). Where a plaintiff's well-pleaded facts are sufficient to state a claim

on which relief can be granted, the only remaining issue is if the plaintiff provided adequate

support for his requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119

(S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

Damages against a defaulting defendant must be proved through the submission of evidence. See Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the appropriate damages without holding a hearing so long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, and Transatlantic Marine Claims Agency Inc., 109 F.3d at 111).

## II.    Liability

### A.  Facts Related to Liability

The following facts are established by the evidence submitted in support of this inquest and the allegations in the Complaint, which are deemed admitted except to damages.

#### 1.  The Defendants

From approximately September 2018 through May 1, 2020, the Defendants 168 8th Avenue Food Corp. and Saleh owned, operated, and/or controlled the Square Deli, located at 168 8th Avenue, New York, New York, 10011. Compl. ¶ 2; Pl. Brief Ex. 3 Aurelio Pinzon Declaration ("AP Dec.") ¶ 3; Pl. Brief Ex. 4 Lopez Ramirez Declaration ("LR Dec.") ¶ 3. That business was engaged in interstate commerce or activities that affected interstate commerce and grossed more than $500,000 in sales each year from 2014 through 2020. Compl. ¶¶ 28, 29, 34, 48; AP Dec. ¶ 6; LR Dec. ¶ 6. Throughout the relevant period, the Defendants had the power to hire and fire the Plaintiffs, controlled their terms and conditions of employment, and determined their rate and method of compensation. Compl. ¶¶ 19, 27.

4

### 2.  The Plaintiffs

Defendants employed Pinzon as a cook—a role that required neither his independent discretion nor judgment—from approximately September 10, 2018, through November 8, 2019. Compl. ¶¶ 4, 30, 32, 33, 35; AP Dec. ¶¶ 4, 5, 7. Throughout his employment, Pinzon worked ten-hour shifts five days per week, and one eight-hour shift once per week—totaling 58 hours of work weekly. Compl. ¶ 37; AP Dec. ¶ 9. He was paid in cash: $14 hourly from September 10, 2018, through December 2018; and $15 hourly from January 2019 through November 8, 2019. Compl. ¶¶ 39, 40; AP Dec. ¶¶ 10, 11.

Defendants employed Ramirez as a stock worker—a role that required neither his independent discretion nor judgment—from approximately October 1, 2018, through May 1, 2020. Compl. ¶¶ 4, 30, 46, 48, 49; LR Dec. ¶¶ 4, 5, 7. Throughout his employment, Ramirez worked ten-hour shifts six days per week—totaling 60 hours of work weekly. Compl. ¶ 51; LR Dec. ¶ 8. He was paid a fixed weekly salary in cash: $550 weekly from October 2018 through March 2019; $600 weekly from April 2019 through January 2020; and $700 weekly from February 2020 through May 2020. Compl. ¶¶ 52–55; LR Dec. ¶¶ 9-12.

The Defendants never provided Plaintiffs with accurate wage statements or written notice of their rate of pay, their regular pay day, and other statutorily mandated information. Compl. ¶¶ 43, 44, 58, 59; AP ¶¶ 15, 16; LR Dec. ¶¶ 15–17. In addition, the Defendants required that Pinzon purchase $200 in "tools of the trade"—pants and shoes—with his own funds, for which he was never reimbursed. Compl. ¶ 45. Ramirez likewise purchased $540 in "tools of the trade"—a bicycle, helmet, pants, and shoes—for which he was not reimbursed. Compl. ¶ 60, LR Dec. ¶ 14.

### B. Liability Under the Fair Labor Standards Act and New York Labor Law

To plead a FLSA claim, plaintiffs must show that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." Pelgrift v. 335 W. 41st Tavern Inc., No. 14-cv-08934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Jiaren Wei v. Lingtou Zhengs Corp., No. 13-cv-05164 (FB)(CLP), 2015 WL 739943, *5 (E.D.N.Y. Feb. 20, 2005)).

Plaintiffs adequately pleaded the first prong by alleging that 168 8th Avenue Food Corp. employed at least two employees and had annual gross sales greater than $500,000. Plaintiffs also properly allege that they are an "individual employed by an employer." 29 U.S.C. § 203(e)(1). See Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 32 (E.D.N.Y. 2015) ("Insofar as Plaintiffs' complaint alleges that Defendants employed Plaintiffs within this statutory meaning, it follows that for purposes of this default, they qualify as 'employees' under the FLSA.") (citing Garcia v. Badyna, No. 13-cv-004021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014) (cleaned up)). Finally, because cooks and stock workers are not exempt from FLSA's minimum wage and overtime requirements. Plaintiffs may recover for their claims. See id. (describing exemption categories).

Plaintiffs also sufficiently alleged that Defendant Saleh is liable as an employer under FLSA. The definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This definition is interpreted expansively so that the statute may "have 'the widest possible impact in the national economy.'" Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)). To be an "employer," an

6

individual defendant must "must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013).

Courts consider four factors to determine whether an individual is an "employer": "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (citing Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)) (internal quotation marks omitted). Employment is a "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Id. at 104. Plaintiffs allege that Saleh owned, operated, and controlled the Square Deli, and maintained employment records, determined the Plaintiffs' wages, compensation, and work schedules, and had the authority to hire and fire employees, including the Plaintiffs. Compl. ¶ 19. The Court finds that each of the economic reality factors is satisfied, and thus Saleh was the Plaintiffs' employer.

Plaintiffs also claim that the Defendants violated NYLL's minimum wage, overtime pay, expense reimbursement, notice, and pay stub requirements. Compl. ¶¶ 65, 69, 70, 85– 97. The NYLL's definition of employee and employer are almost identical to the FLSA's, but NYLL does not require that a defendant achieve a certain minimum in sales to be liable. See Pelgrift, 2017 WL 4712482, at *7. See also NYLL §§ 651(5)-(6). Because Defendants are liable as employers for FLSA purposes, they are also liable under NYLL. See Pelgrift, 2017 WL 4712482, at *7 (noting that the tests for individual defendants under FLSA and NYLL are not meaningfully different). Under both the FLSA and NYLL, each Defendant is jointly and

severally liable for any damages award. See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).

Plaintiffs established an employer-employee relationship. Accordingly, the Defendants they are jointly and severally liable for Plaintiffs' alleged violations of the FLSA and the NYLL, which I consider below.

### 1. Minimum Wage and Overtime Claims

First, Plaintiffs claim that Defendants violated the FLSA and NYLL's minimum wage requirements. Pursuant to both laws, an employee must be paid the minimum wage for the first 40 hours worked in each week. 29 U.S.C. § 206(a); 12 N.Y.C.R.R. § 146–1.2. For hours worked in excess of 40, employees are entitled to be paid at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142–2.2. To state a claim for failure to pay overtime compensation, a plaintiff "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). An employer who violates sections 206 or 207 of the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

Employers bear the burden to maintain proper records of the number of hours their employees work. 29 U.S.C. § 211(c). See also Kuebel v. Black & Decker Inc., 643 F.3d 352, 363 (2d Cir. 2011) ("a plaintiff establishes a violation of the FLSA by proving that he performed uncompensated work of which his employer was or should have been aware"). Plaintiffs,

however, may meet their burden based only on their own recollection of hours worked. Id. at 362. See also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

Pinzon alleges that he was paid $14 per hour from September 10, 2018, through December 2018, and $15 hourly from January 2019 through November 8, 2019. AP Dec. ¶¶ 10–11. From September 20, 2018, through December 2018, the federal minimum wage was $7.25 per hour, while the appropriate minimum wage in New York City for that same period was $13 per hour. See 29 U.S.C. § 206; 12 N.Y.C.R.R. § 146-1.4. From December 31, 2018, through November 8, 2019, the federal minimum remained the same, while the New York City minimum wage rose to $15.00 for large employers.[1] Id. Because Pinzon was paid above or at the appropriate minimum wage in both periods, he has not properly alleged a minimum wage claim.

Ramirez alleges that he was paid a flat weekly rate of $550 from October 2018, through March 2019; $600 from April 2019 through January 2020; and $700 from February 2020 through May 2020. Compl. ¶¶ 52–55; LR Dec. ¶¶ 9-12. Throughout the entire period he worked 60 hours each week—accordingly, his regular rate for the first 40 hours was $13.75 from October 2018 through March 2019, $15 from April 2019 through January 2020, and $17.50 from February 2020 through May 2020. See 12 N.C.C.R.R. § 146-3.5. From December 31, 2018, though March 2019, the applicable minimum wage was $15 per hour. Accordingly, Ramirez was paid below the minimum wage for 13 weeks, and the Court finds that the Defendants are liable for his minimum wage claims.

---

[1] Plaintiffs did not state the number of employees at Square Deli. Starting December 31, 2018, employers of 11 or more employees were required to pay $15 hourly, whereas employers with 10 employees or fewer were required to pay only $13.50 from December 31, 2018, through December 31, 2019, after which they were required to pay $15 hourly. See 12 N.Y. Ad. Code. § 146-1.4. Because Defendants do not dispute the Plaintiffs' findings, the Court infers that Square Deli had at least 11 employees.

Plaintiffs also allege that they each worked more than 40 hours per week. Pinzon alleges that he always worked an average of 58 hours per week, while Ramirez worked an average of 60 hours weekly. Because both allege working over 40 hours weekly, and that they received no overtime premium pay, the Court finds that the Defendants are liable for these claims.

### 2. Failure to Reimburse for Expenses

Plaintiffs allege that the Defendants violated the FLSA and the NYLL by failing to reimburse them for expenses related to tools-of-the-trade: $200 in pants and shoes for Pinzon, and $540 for pants, shoes, a bicycle, and a helmet for Ramirez.

Under New York law, an employer cannot require its employees to pay for the cost of a required uniform. 12 N.Y.C.R.R. § 146–1.8 ("When an employee purchases a required uniform, he or she shall be reimbursed by the employer for the total cost of the uniform no later than the next payday."). A required uniform is "clothing required to be worn while working at the request of an employer . . . except clothing that may be worn as part of an employee's ordinary wardrobe," id. § 146–3.10(a), meaning "ordinary basic street clothing selected by the employee where the employer permits variations in details of dress," id. § 146–3.10(b).

In contrast, federal law requires an employer to cover the cost of a uniform only when "the employees' expenditures . . . would reduce their wages to below minimum wage." Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 310 (S.D.N.Y. 1998). The term "uniform" is not expressly defined, however, the U.S. Department of Labor's Field Operations Handbook (the "FOH") suggests that, "[a]lthough there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms," where an employer "permits variations in details of dress," "a general type of ordinary basic street clothing [that is required] to be worn while working . . . would not be considered . . . [a] uniform." FOH § 30c12(f)(1). Instead, uniforms are "a specific

type and style of clothing" such as "a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality." Id. § 30c12(f)(1)(b).

Therefore, before determining whether reimbursement is appropriate, both frameworks require that the Plaintiffs show that the clothing they purchased constituted a "uniform or special clothing" that their employer required them to wear. See 29 C.F.R. §§ 788.217(b)(1) & (b)(2). Here, both Plaintiffs allege that they were required to purchase pants and shoes as part of their employment, but provide no further details regarding whether these items of clothing were specialized for their employment, bore a company logo, or otherwise were not of a "general type of ordinary basic street clothing." FOH § 30c12(f)(1); accord 12 N.Y.C.R.R. § 146–3.10(b). Such thin allegations cannot support a finding that the pants and shoes they purchased constituted a "uniform," and thus reimbursement is not appropriate. See Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 512 (S.D.N.Y. 2010) (finding that the plaintiffs' failure to "detail what their 'uniforms' are comprised of and, in particular, whether they consist of ordinary wardrobe items" did not support a tools-of-the-trade reimbursement claim).

Additionally, "[v]ehicles such as bicycles, motorcycles, and mopeds are considered 'tools-of-the-trade' if employees are required to possess and utilize them in the course of their employment." Id. at 511. Although Ramirez alleges that he was required to purchase a bicycle and helmet as a condition of his employment, he fails to provide any facts connecting the use of the bicycle to his position as a stock worker. And—unlike a delivery driver or other position requiring a worker to run regular errands—it is not self-evident how a bicycle was required "in the course of [his] employment." Id. Moreover, Ramirez did not disaggregate the cost of the bicycle and helmet from those of the shoes and pants, making it impossible for the Court to understand the relative costs of his requested reimbursements.

11

Accordingly, given the Plaintiffs' failure to allege this claim with enough detail, the Court finds that they are not entitled to reimbursements for tools-of-the-trade expenses.

### 3. NYLL Time of Hire Wage Notice Requirement

The NYLL requires an employer to provide employees a notice at the time of hiring containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances." NYLL § 195(1). Failure to provide this notice entitles an employee to recover "damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-b).

Plaintiffs state that the Defendants never provided them with written notices regarding the terms and conditions of their employment, including never providing any notices on their rate of pay, regular pay cycle, or overtime. Accordingly, they have sufficiently pleaded this claim and are entitled to statutory damages. See Canelas v. A'Mangiare Inc., No. 13-cv-03630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) (employees who began working after April 9, 2011, are entitled to recover under § 195(1)(a)).

### 4. NYLL Pay Stub Requirement

Finally, Plaintiffs allege that Defendants violated the NYLL by failing to provide them with required pay stub information, including the dates or work covered, rates of pay, and other mandated information. Compl. ¶ 93. The NYLL requires that employers provide employees with certain pay stub information "with every payment of wages." NYLL § 195(3). A plaintiff may recover $250 for each workday during which the employer failed to provide this information, not to exceed $5,000. Id. § 198(d-1). Although the Complaint does not state the number of days that

Defendants failed to provide the pay stub notices, they allege that such notices were never provided throughout their years of employment, entitling each to the maximum penalty.

## III.    Damages

Because the Plaintiffs have demonstrated that the Defendants are liable for violations of the FLSA and the NYLL, it is appropriate to award them damages as supported by the evidence submitted for this inquest. See Pl. Brief, Ex. 5 Plaintiffs' Damages Chart ("Pl. Chart").

### A.  Unpaid Minimum Wage and Overtime

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. See 29 U.S.C. §§ 206(a), 207(a)(1). Similarly, the NYLL requires a 150 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2.

As discussed above, throughout his employment, Pinzon was paid an hourly rate with no overtime premium for his hours worked. Accordingly, Pinzon is entitled to a 50 percent premium for all hours worked after 40. By contrast, Ramirez was paid a weekly salary. The Plaintiffs cited the incorrect "Miscellaneous Worker" standard in their brief for determining Ramirez's regular rate of pay, which is derived "by dividing the total hours worked during the week into the employee's total earnings." Id. § 142-2.16; Pl. Brief ¶ 47. This led to a miscalculation of the damages to which he was entitled and rendered their damages Chart calculations as to his payments incorrect. Compare Pl. Chart, with Appendix 1 to the Report and Recommendation ("App'x 1"). Instead, Ramirez qualified as a "Hospitality Worker," and therefore his regular rate of pay should have been derived "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5. Accordingly, the Court provides an Appendix to the Report

and Recommendation recalculating his minimum wage, overtime, and liquidated damages based upon the proper standard. See App'x. Charts 1 & 2.

### 1. Ramirez and Pinzon Unpaid Minimum Wage Pay

As discussed above and shown in the Appendix, Ramirez was paid a regular hourly rate of $13.75 for 40 hours per week from October 1, 2018, through March 31, 2019, totaling 26 pay periods. See App'x Chart 1. For half of those pay periods, the appropriate minimum wage was $13 per hour ($0.75 less than he was paid), and for the second half the appropriate rate was $15 per hour ($1.25 more than he was paid). See id. For the remainder of Ramirez's employment, and for the duration of Pinzon's employment, both Plaintiffs' regular rates exceeded the minimum wage. Id. Charts 1 & 2. Accordingly, Ramirez alone is entitled to unpaid minimum wage pay for 13 weeks of underpayment, at $1.25 for 40 hours per week, totaling $650. Id.

### 2. Ramirez and Pinzon Unpaid Overtime Premium Pay

Under the New York Hospitality Industry Wage Order and the FLSA, "an employer shall pay an employee for overtimes at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 146-1.4; see also 29 U.S.C. § 207(a)(1). At a minimum, the employee's regular rate must equal the statutory minimum wage. See, e.g., Baltierra v. Advantage Pest Control Co., No. 14-cv-05917 (AJP), 2015 WL 5474093, at *5 (S.D.N.Y. Sept. 18, 2015). As shown in the Court's Appendix, Ramirez is entitled to $37,392.50 in unpaid overtime, reflecting 150% of his regular hourly rate, and Pinzon is entitled to $8,091 in unpaid overtime, reflecting a 50% premium for all hours over 40. See App'x Charts 1 & 2.

### B. Liquidated Damages

Under the FLSA, a Plaintiff who is owed minimum or overtime wages may recover an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The court may reduce or deny liquidated damages if the employer can show that "the act or omission giving rise to [the FLSA action] was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA]." 29 U.S.C. § 260. Similarly, under the NYLL, an employee is entitled to liquidated damages equal to the amount of the overtime pay "[u]nless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y.L.L. § 198(1-a).

To establish "good faith" under the FLSA, an employer must show that it took "active steps to ascertain the dictates of the FLSA and then act to comply with them." Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "NYLL's willfulness standard 'does not appreciably differ' from the FLSA's willfulness standard." Kuebel v. Black & Decker, Inc., 643 F.3d 362, 366 (2d Cir. 2011) (citing cases).

Until recently, district courts were split on whether plaintiffs could recover liquidated damages under both federal and state law. Compare Paz v. Piedra, No. 09-cv-03977 (LAK) (GWG), 2012 WL 12518495, at *11 (S.D.N.Y. Jan. 12, 2012) (awarding liquidated damages only under the FLSA regime), with Tackie v. Keff Enters. LLC, No. 14-cv-02074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014) (holding that liquidated damages can be awarded under the FLSA and NYLL). The Court of Appeals has since clarified, however, that plaintiffs may not recover "duplicative liquidated damages for the same course of conduct" under both

15

statutes. Rana v. Islam, 887 F.3d 118, 122–23 (2d Cir. 2018). Accordingly, the Court will award the plaintiffs liquidated damages under the NYLL only.

The Defendants did not oppose the motion or provide any evidence that their violations were committed in good faith. Therefore, the Plaintiffs are entitled to liquidated damages equal to their actual underpayment amounts. Accordingly, the Defendants are liable for an additional $46,133.50 in liquidated damages—$38,042.50 to Ramirez and $8,091 to Pinzon.

### C. Statutory Wage and Paystub Notice Damages

As discussed above and shown through the uncontroverted evidence, the Plaintiffs were not provided with the requisite wage notice at the start of their employment, or wage statement with each payment. Accordingly, the Court finds that the Plaintiffs are entitled to statutory damages in the maximum amount under each section, with Defendants liable for an additional $20,000—$10,000 to Ramirez and $10,000 to Pinzon.

### D. Prejudgment Interest

New York law provides that plaintiffs are entitled to pre-judgment interest on unpaid wages, at a rate of nine percent per year. See N.Y. C.P.L.R. § 5004; see also Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (finding that pre-judgment interest is appropriate under New York law, even when the plaintiff has been awarded liquidated damages). Interest may be computed "from a single reasonable intermediate date" when the damages were incurred. N.Y. C.P.L.R. § 5001(b). A plaintiff in a wage-and-hour case "may recover prejudgment interest only on his actual damages . . . not [his] liquidated damages." Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017) (internal citations omitted). "Prejudgment interest is [also] not available for violations of the wage statement or wage notice provisions." Id. (internal citations omitted). Finally, courts have "wide discretion in determining

16

a reasonable date from which to award prejudgment interest," and interest is calculated using the simple, not a compounded rate. See Conway v. Ichan & Co., 16 F.3d 504, 512 (2d Cir. 1994); Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015).

Applying a reasonable intermediate date, the Court selects the midpoint of the terms of each Plaintiffs' employment for purposes of calculating prejudgment interest. Accordingly, I recommend that the Court award prejudgment interest to Ramirez from July 17, 2019 (the midpoint between his starting date of October 1, 2018, and his end date of May 1, 2020) to the entry of judgment, and for Pinzon from April 10, 2019 (the midpoint between his starting date of September 10, 2018, to his end date of November 8, 2019) to the entry of judgment.

## IV.    Attorney's Fees and Costs

Both FLSA and the NYLL entitle prevailing plaintiffs to their reasonable attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 198(1–3). Courts determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay . . . who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2007).

The "presumptively reasonable fee" is the product of a reasonable hourly rate and a reasonable number of hours engaged in litigating the matter. See Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011). Requested fees must be supported "with contemporaneous time records establishing for each attorney for whom fees are sought, the date on which work was performed, the hours expended, and the nature of the work done." Annuity, Welfare & Apprenticeship Skill Imp. & Safety Funds of Int'l Union of Operating Eng'rs, Local 15, 15A, 15C, 15D, AFL-CIO v. Integrated Structures Corp., No. 12-cv-00436 (LGS) (KNF), 2013 WL

17

2649644, at *7 (S.D.N.Y. June 13, 2013), adopted by 2013 WL 3684933 (July 12, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983) (cleaned up)).

Here, Plaintiffs request a total of $8,360 in attorney's fees for 32.6 hours of attorney and paralegal work. See Pl. Brief ¶¶ 62, 65, 66; id. Ex. 5. Attorney Michael Faillace is the managing member of Michael Faillace & Associates, P.C., and has practiced law since 1983. Pl. Brief Ex. 5 ¶ (i). He was in-house employment counsel for IBM for 17 years, has taught employment law as an adjunct professor at Fordham University School of Law and at Seton Hall University School of Law and is the author of a disability law desk-book. Id. He requests an hourly rate of $450 for 8.2 hours of work. Pl. Brief Ex. 6.

Associate Jordan Gottheim graduated from Fordham Law School in 2016 and was admitted to practice in New York in 2017.[2] Pl. Brief Ex. 5. ¶ (ii). He has worked as an associate at Michael Faillace & Associates from January 2020 through January 2021 and worked as an associate at three other firms in the previous three years. Id. He requests an hourly rate of $350 for 14.8 hours of work performed. Pl. Brief Ex. 6. Associate Catalina Sojo graduated with a J.D. equivalent from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017 and received an L.L.M. from Cornell University of Law in 2019. Id. at ¶ (iii). She joined Michael Faillace & Associates in June 2020 and worked previously at another firm and as in-house counsel at Viacom/CBS. Id. She requests an hourly rate of $350 for 5.3 hours of work. Id. at Ex. 6.

## A. Reasonable Rates

---

[2] Information not found in the Plaintiffs' damages inquest submissions regarding Mr. Gottheim's bar admission and work experience was found in the New York Bar Exam's public records and on his professional LinkedIn page.

In determining the reasonable fee for a particular case, courts rely on reasonable hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience. See id. (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13-cv-02548 (KMW) (JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014). "It is the fee movant's burden to establish the prevailing market rate." Sub-Zero, Inc., 2014 WL 1303434, at *8.

As far back as fifteen years ago, courts in this district held that $425 is reasonable for an attorney with less experience than Mr. Faillace. See, e.g., Ashkinazi v. Sapir, No. 02-cv-2005, 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) (awarding $425 per hour to a partner in a small firm specializing in employment law, with 26 years of experience); Severino v. 436 West, LLC, et al., No. 13-cv-03096 (VSB), ECF No. 80 (S.D.N.Y. Oct. 28, 2016). Given the passage of time and rising rates, the Court would usually find Mr. Faillace's requested rate of $450 to be reasonable. Because of the noteworthy errors detailed below, however, the Court is unconvinced that Mr. Faillace's experience resulted in efficiencies and thus reduces his rate to $350 per hour.

An appropriate associate rate depends upon their level of experience. Thor 725 8th Avenue LLC v. Goonetilleke, No. 14-cv-04968 (PAE), 2015 WL 8784211, at *11 (S.D.N.Y. Dec. 15, 2015). Case law, however, may not be current with prevailing rates. More than five years ago, when considering fee applications for smaller firms, courts typically awarded $300 per hour for "senior associates with at least eight years of experience," and between $125 and $215 per hour to associates "with three years of experience or less." Id. (quoting Apolinario v. Luis Angie Deli Grocery Inc., No. 14-cv-02328 (GHW), 2015 WL 4522984, at *3 (S.D.N.Y. July 27, 2015)). More recent courts have continued to approve billing rates in line with this framework. See, e.g., Plus Enters. LLC v. Sun Trading Int'l, LLC, No. 16-cv-08987 (VB) (FED),

2017 WL 6492117, at *9 (S.D.N.Y. Nov. 29, 2017) (approving $230 and $260 rates

for associates in small law firm), adopted by 2017 WL 6496541 (Dec. 15, 2017); Skoogfors v.

Lycos, Inc., No. 16-cv-02742 (PGG) (JCF), 2017 WL 10591577, at *5 (S.D.N.Y. Apr. 21,

2017) (finding that $225 per hour is "well within the range of acceptable rates" for a third-year

associate), adopted by 2018 WL 4761521 (S.D.N.Y. Oct. 2, 2018).

The Court finds that the requested $350 hourly rates for both Mr. Gottheim and Ms. Sojo

are unreasonably inflated in comparison with other rates awarded to associates with similar

experience and credentials, even when accounting for rising associate rates. Accordingly, their

hourly rates are reduced to $300. See Carey, 711 F.2d at 1153 (applying current rates for services

"rendered over two or three years").

Finally, the Plaintiffs request that work billed by their paralegals be billed at a rate of

$125 per hour. Courts in this district have previously noted that such requested rates for a

paralegal are "higher than the norm." Gonzales v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29

(S.D.N.Y. 2015). Instead, the Court finds that $100 per hour is appropriate.

## A.  Reasonable Hours

"[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must

document the application with contemporaneous time records . . . . specify[ing], for each

attorney, the date, the hours expended, and the nature of the work done." Carey, 711 F.2d at

1148. The Court's task is to make "a conscientious and detailed inquiry into the validity of the

representations that a certain number of hours were usefully and reasonably expended." Lunday

v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). In making this determination, "court[s]

should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany &

Co., 166 F.3d 422, 425 (2d Cir. 1999). In doing so, the court may make specific reductions or an

across the board reduction where the number of billing entries is voluminous. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

Counsel seeks to be paid for 36.6 hours of attorney and paralegal time. Defendants in this case never appeared, answered, or otherwise contested the Plaintiffs' claims, and the case ultimately defaulted. Before moving for default, the Plaintiffs' sole task was filing the Complaint. Approximately 29 hours were expended between initiating the case and moving for default—15.8 of which were billed by the paralegal. Counsel's submitted records—in the form of an invoice, not contemporaneous records—show that the attorney hours were inflated with tasks including extensive docket review (including duplicate review), multiple corrections of docketing mistakes, and calls with the clients "updating" them on the case and reviewing "new documents" in periods when the case was dormant. See Pl. Brief Ex. 6.

In addition, the submitted records reflect that Mr. Faillace performed some basic document review, docket review, and filing of the type normally conducted by junior associates or paralegals, substantially inflating the price paid for such tasks. Id. Furthermore, several entries in counsel's records appear to have entirely extraneous information or mistakes regarding events that are reflected on the docket. See id. (entry at "Sep-14-20" for Mr. Faillace "directed s.3 taqueria mesa"; entry at "Nov-17-20" for Mr. Faillace "reviewed magistrate's court order," when the docket reflects the order was by the Honorable Paul A. Engelmayer at ECF No. 18; entry at "Dec-03-20" for Mr. Faillace "la Risaralda: reviewed email sent by oc requesting that we communicate with him; sent email to DT and IG requesting that they respond to oc's note immediately," where no party or attorney working on the case had those initials or pertain to

anything labeled "la Risaralda"). These mistakes and extraneous information raise serious concerns regarding the overall accuracy of counsel's provided records.

Finally, given the critical legal error present in the Plaintiffs' damages inquest briefing and borne out in their damages Chart, which miscalculated Ramirez's recovery and would have resulted in a significant reduction to his damages, it is difficult to grasp how counsel expended nearly five hours drafting what appears to be a fairly boilerplate submission. This is especially true when certain paragraphs are in direct contradiction about the applicable standards. Compare Pl. Brief ¶ 47; with Pl. Brief ¶ 48 (stating competing standards for determining the regular rate of pay); see Pl. Chart. (undervaluing claims by almost $6,000).

Given the various errors, inflations, inconsistencies, billing for duplicate tasks due to counsels' own mistakes, and plainly incorrect entries presented in the records—which are not in the form of contemporaneous records, but simply a client invoice—the Court has serious reservations about awarding any attorney's fees. See, e.g., Maria, et al. v. Rouge Tomate Chelsea, LLC, et al., No. 18-cv-09826 (VSB) (GWG), WL 6049893, at *8 (S.D.N.Y. Oct. 14, 2020) (declining to award Mr. Faillace's firm's requested fees for failing to provide contemporaneous records), adopted No. 18-cv-09826 (VSB) (GWG), 2021 WL 734958, at *2 (S.D.N.Y. Feb. 25, 2021) (adopting Judge Gorenstein's report and recommendation over Mr. Faillace's objections to not being awarded fees).

Because the Defendants failed to contest the Plaintiffs' submissions, however, I decline to recommend such a severe reduction. Instead, I recommend that the Court impose an across-the-board reduction of counsel's requested hours by half in equal proportions, resulting in 7.9 paralegal hours at $100 hourly, 6.35 associate hours at $300 hourly, and 2.05 partner hours at $350 hourly, for a total attorney's fees award of $3,412.50.

22

## B. Costs

Plaintiffs also seek $550 in costs for filing and service fees. The Court finds these costs to be reasonable and comparable to other amounts awarded upon default judgment. See Romita v. Anchor Tank Lines Corp., No. 09-cv-09997 (DLC), 2011 WL 1641981, at *2 (S.D.N.Y. Apr. 29, 2011) (awarding $504 in court costs for filing and process server fees); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union No. 12A v. Trade Winds Envtl., No. 09-cv-01771 (RJH) (JLC), 2010 WL 8020302, at *6 (S.D.N.Y. Dec. 23, 2010) (awarding $701.75 in court costs for filing and process server fees).

## CONCLUSION

For the foregoing reasons, I recommend that the Court find the Defendants jointly and severally liable for $116,229.50, plus applicable interest, broken down as:

(1) $38,042.50 in wage and hour damages to Ramirez, plus 9% prejudgment simple interest, calculated from July 17, 2019, to the date of judgment;

(2) $8,091 in wage and hour damages to Pinzon, plus 9% prejudgment simple interest, calculated from April 10, 2019, to the date of judgment;

(3) $38,042.50 for Ramirez and $8,091 Pinzon in liquidated damages;

(4) $10,000 for Ramirez and $10,000 for Pinzon in statutory wage notice damages;

(5) $3,412.50 in attorney's fees; and

(6) $550 in costs.

SARAH NETBURN
United States Magistrate Judge

Dated: July 14, 2021
      New York, New York

\*          \*          \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**Appendix to Report and Recommendation**

Chart 1 - Ramirez Minimum Wage, Overtime, and Liquidated Damages

| Pay Period | Weeks in Period | Actual Pay Received Per Week | Actual Hours Worked | Regular Rate of Pay[i] | Applicable Minimum Wage[ii] | Applicable Overtime Pay Rate[iii] | Min. Wage Pay Owed[iv] | Overtime Owed[v] |
|---|---|---|---|---|---|---|---|---|
| 10/01/18 – 12/31/18 | 13 | $550.00 | 60 | $13.75 | $13.00 | $20.625 | - | $5,362.50 |
| 01/01/19 – 03/31/19 | 13 | $550.00 | 60 | $13.75 | $15.00 | $22.50 | $650.00 | $5,850.00 |
| 04/01/19 – 01/31/20 | 43 | $600.00 | 60 | $15.00 | $15.00 | $22.50 | - | $19,355.00 |
| 02/01/20 – 05/01/20 | 13 | $700.00 | 60 | $17.50 | $15.00 | $26.25 | - | $6,825.00 |
| | | | | | Total Actual Minimum Wage & Overtime Damages | | $650 | $37,392.50 |
| | | | | | Liquidated Damages at 100% | | $650 | $37,392.50 |

Chart 2 – Pinzon Minimum Wage, Overtime, and Liquidated Damages

| Pay Period | Weeks in Period | Actual Pay Received Per Week | Actual Hours Worked | Regular Rate of Pay | Applicable Minimum Wage | Applicable Overtime Pay Rate | Overtime Paid | Overtime Owed |
|---|---|---|---|---|---|---|---|---|
| 9/10/18 – 12/30/18 | 16 | $812.00 | 58 | $14.00 | $13.00 | $21.00 | $4,032 | $2,016 |
| 12/31/18 – 11/8/19 | 45 | $870.00 | 58 | $15.00 | $15.00 | $22.50 | $12,150 | $6,075 |
| | | | | | Total Actual Minimum Wage & Overtime Damages | | - | $8,091 |
| | | | | | Liquidated Damages at 100% | | - | $8,091 |

---

[i] Because Ramirez is classified as a "Hospitality Worker," and he was paid on a weekly salary, his regular rate of pay is derived "by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5.
[ii] See Basic Minimum Hourly Rate, 12 N.Y.C.R.R. § 146-1.2.
[iii] The applicable overtime pay rate is calculated by multiplying the regular rate of pay by 1.5 times. See
[iv] Minimum wage owed is calculated by subtracting the regular rate of pay from the applicable minimum wage (if higher), then multiplying first by the regular hours worked in each week (the first 40), and then by the number of pay periods in which the regular rate fell below the minimum. For example, if the minimum was $15.00, but the regular rate was $13.75, the difference is $1.25. Therefore, the calculation is: ($1.25 x 40) x (number of weeks) = minimum wage owed for the underpayment period.
[v] Overtime pay owed is calculated by multiplying their applicable overtime rate by the number of hours worked over 40 each week, and again by the number of applicable weeks in each pay period.